## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

OPERA SOLUTIONS, LLC,       :
                            :

       Plaintiff,          :
                            :

     v.                  :     C.A. No. 15-287-LPS
                            :

SCHWAN'S HOME SERVICE, INC.   :
                            :

       Defendant.       :

Daniel M. Silver, Jameson Tweedie, MCCARTER & ENGLISH, LLP, Wilmington, DE.

Thomas J. Finn, Paula Cruz Cedillo, MCCARTER & ENGLISH, LLP, Hartford, CT.

     Attorneys for Plaintiff.


Robert J. Katzenstein, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE.

Michael D. Hutchens, M. Gregory Simpson, MEAGHER & GEER, P.L.L.P., Minneapolis, MN.

     Attorneys for Defendant.


### MEMORANDUM OPINION


July 1, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Plaintiff Opera Solutions, LLC's ("Plaintiff" or "Opera")

Partial Motion to Dismiss Defendant Schwan's Home Services' ("Defendant" or "Schwan")

Counterclaims.  (D.I. 83) ("Motion")  Briefing on the motion was completed on December 30,

2015.  (D.I. 84, 87, 90)  For the reasons set forth below, the Court will deny Plaintiff's motion.

## I.    BACKGROUND

Plaintiff Opera is a technology and analytics company that provides consulting services to

help "deliver rapid profit improvement for its clients."  (D.I. 78 at ¶ 8)  Defendant Schwan is "the

largest direct-to-home frozen food delivery provider in the United States, and markets and

delivers its products to millions of consumers throughout the country via home delivery trucks."

(*Id.* at ¶ 9)

On January 22, 2009, Opera and Schwan entered into a Consulting Services Licensing

Agreement ("CSLA"), pursuant to which Opera was to provide "Production Licenses" for its

sales recommendations for certain households serviced by Schwan, in return for an annual

License Fee to be paid to Opera for each Production License.  (D.I. 20 Ex. A)  The CSLA

provides that Production Licenses are required for "Treated Households," which consist of the

middle seven deciles of households deemed "Active Households" by Schwan, i.e., Active

Households excluding the top decile and bottom two deciles.  (*Id.* at §3.2(d))  "Active

Households," in turn, are defined in the CSLA as households with a sale in the preceding 14

weeks and assigned to a "Route."  (*Id.*)  The CSLA further provides that "[t]he term of each

Production License shall commence on the date such Production License is granted and shall

terminate upon expiration of the Term or, if earlier, upon termination of this Agreement pursuant

1

to Section 9." (*Id.* at § 6.1)  The CSLA provides for limitations on the "redeployment" of

Production Licenses:

> Except as set forth in this Section 6.4, each Production License or
> Quarantine License shall be granted with respect to a specific
> Treated Household (or other Active Household, in the case of
> Quarantine Licenses) and may not be transferred, re-assigned, re-
> deployed or otherwise applied to or used for a household other than
> such original, specific Treated Household (any of the foregoing
> being referred to as the "Redeployment" of a Production License,
> or to "Redeploy" such Production License).

(*Id.* at § 6.4)

On September 1, 2010, the parties entered into Amendment No. 1 ("Amendment") to the

CSLA.  (D.I. 20 Ex. B)  The Amendment required Schwan to pay Opera $4,850,000 for up to

3,000,000 Production Licenses (the "Production License Threshold"), and $0.08 for each

additional Production License above the Production License Threshold.  (*Id.* at § 6.2)  The

Amendment also eliminated Section 6.4's discussion of redeployment.  (See *id.*)  Further, it

added that Schwan's selection of the "unique households" to which particular licenses would

relate would be undertaken "during each calendar year."  (*Id.* at § 6.2)

Section 6 of the Amendment provides:

> **6.1 Production Licenses.**
> Effective as of [September 1, 2010], Opera grants Schwan a
> limited, exclusive, terminable (in accordance with the terms
> hereof) license to use and distribute the Production Phase
> Deliverables provided by Opera hereunder for up to Three Million
> (3,000,000) Treated Households in accordance with the terms
> hereof, including all tangible and intangible media in which such
> Production Phase Deliverables are expressed (each such individual
> household license, a "Production License").  The terms of each
> Production License shall commence on the date such Production
> License is granted and shall terminate upon the expiration of the
> Term or, if earlier, upon termination of this Agreement pursuant to

2

Section 9.

**6.2 Quantity of Production Licenses**.
Throughout the Production Phase during each calendar year,
Schwan shall be entitled to determine in its discretion which and
how many unique households shall be served hereunder up to the
Production License Threshold (as defined in Section 6.3 below).
In no event shall Opera be required to refund any License Fee or
portion thereof at any time or for any reason.

**6.3 License Fees**.
(a) Schwan shall pay Opera license fees ("License Fees") equal to
Four Million Eight Hundred Fifty Thousand Dollars ($4,850,000)
for Three Million (3,000,000) Production Licenses, which shall
include the cost for converting all applicable Quarantine Licenses.
In the event that the number of Production Licenses Schwan elects
to license exceeds Three Million (3,000.000) (the "Production
License Threshold"), for each Production License in excess of the
Production License Threshold, Schwan shall pay Opera License
Fees equal to Eight Cents ($0.08) per month multiplied by the
number of months remaining in the Term thereof.  License Fees
shall be payable in accordance with Section 7.3.  Notwithstanding
anything in this Agreement to the contrary, Schwan shall pay the
License Fees in accordance with the following payment schedule:

. . . .

**6.4 Termination of Quarantine Licenses**.
Effective as of the Amendment Effective Date, all Quarantine
Licenses shall automatically convert into Production Licenses and
shall be counted against the Production License Threshold.

(*Id.*)

On February 26, 2013, Opera sued Schwan in the Southern District of New York

("SDNY").  (D.I. 1)  On April 1, 2015, the case was transferred to the District of Delaware, after

the SDNY granted Schwan's motion to transfer, over Opera's opposition.  (D.I. 53, 55)  In its

Amended Complaint, Opera asserts claims for breach of contract, breach of the implied covenant

of good faith and fair dealing, unjust enrichment, promissory estoppel, and quantum meruit.

3

(D.I. 78)  Schwan's Answer and Counterclaim includes three breach of contract counterclaims, based on allegations that Opera failed to supply Production Licenses, failed to issue monthly invoices, and breached the parties' agreement that Delaware is the proper forum for their disputes.  (D.I. 79)

On November 2, 2005, Opera moved to dismiss "a substantial portion" of Schwan's counterclaim based on failure to supply Production Licenses[1] and to dismiss Schwan's other two breach of contract counterclaims in their entirety.  (D.I. 83)

## II.    LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint.  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a morion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."  *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

---

[1] In its reply brief, Opera asserts – for the first time – that it is now seeking to dismiss the entirety of Schwan's Counterclaim One.  (D.I. 90 at 1 n.3)  Given that the Court is rejecting Opera's motion to dismiss even just a "substantial portion" of Counterclaim One, the Court likewise would reject its effort to dismiss the entirety of the counterclaim.  Furthermore, Opera's efforts to expand the relief it seeks by way of a footnote in a reply brief is prohibited by the Court's Local Rules.  *See, e.g.*, D. Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

In evaluating a Rule 12(b)(6) motion to dismiss a contract claim, the Court may look at the contract on which the claims are based without converting the motion to one for summary judgment.  *See generally In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (internal quotation marks omitted).

The same standards applicable to dismissal of claims in a complaint also apply to motions

to dismiss counterclaims pursuant to Rule 12(b)(6). *See Fitzgibbon v. ING Bank*, 2008 WL

2977985, at *2 (D. Del. Aug. 26, 2008).

## III.   DISCUSSION

Opera argues that: (1) Counterclaim One partially fails to state a claim upon which relief

may be granted because it is premised on a contractual interpretation contrary to the plain

language of the CSLA and its Amendment; (2) Counterclaim Two fails to state a claim upon

which relief may be granted because it fails to properly allege any damages; and

(3) Counterclaim Three fails to state a claim upon which relief may be granted because it is

premised on a contractual interpretation contrary to the plain language of the CSLA and

Amendment and further because another federal court has already refused to grant the relief

Schwan seeks.  The Court will address each of these arguments in turn.

### A.   Counterclaim One: Failure to Supply Production Licenses

In Counterclaim One, Schwan alleges:

> Opera disregarded and repudiated the clear language of the
> Licensing Agreement and Amendment by: (1) applying the
> Production License Threshold cumulatively over the life of the
> Licensing Agreement and not to "each calendar year"; (2)
> including in its license fee calculation households which were not
> "Active" as determined by Schwan, and thus for whom no
> Production License was required; and (3) including in its license
> fee calculation households which were in the lowest two or top one
> deciles, and thus were to be excluded from the Production License
> requirement.

(D.I. 79 at ¶ 12)  Opera contends that the first two of these theories fail because the CSLA and

Amendment unambiguously provide for application of the Production License Threshold

cumulatively and do not allow Schwan to redeploy licenses from non-Active to Active

Households.  Schwan disagrees, arguing that the CSLA and Amendment provide for annual

6

application of the Production License Threshold and allow Schwan to redeploy licenses from non-Active to Active Households (such that a new Active Household with a redeployed license would not be counted as an additional Treated Household for purposes of the Production License Threshold).  Alternatively, Schwan contends that the governing contractual provisions are ambiguous on these points.

Under Delaware law, contract interpretation is a question of law.  *See Rhone-Poulenc Basis Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).  A court applying Delaware law to interpret a contract is to effectuate the intent of the parties.  *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).  Accordingly, in a situation such as that here, the Court must first determine whether a contract is unambiguous as a matter of law.  *See Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996); *see also GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476, 481-82 (D. Del. 2003).  If the language of the contract is unambiguous, the Court will interpret the contract based on the plain meaning of the language contained in it.  *See GB Biosciences*, 270 F. Supp. 2d at 482 ("The use of extrinsic evidence to interpret clear and unambiguous language in a contract is not permitted.") (applying Delaware law; internal citations omitted); *see also Lorillard Tobacco*, 903 A.2d at 739.  A contract is ambiguous only if it is fairly or reasonably susceptible to different interpretations.  *See Esmark*, 672 A.2d at 43.

With respect to the first theory on which Schwan's Counterclaim One is predicated, Opera argues that because the Production Licenses terminate at the expiration of the Term, the number of Production Licenses are not calculated in each calendar year.  Similarly, Opera contends that because the fees for Production Licenses exceeding the Production License

7

Threshold are multiplied by the number of months remaining in the Term, rather than the number of months remaining in the year, the calculation must be cumulative. Opera further points out that Section 6.3(a) of the Amendment does not impose any time limitation on determining when the Production License Threshold has been exceeded.

None of these arguments, however, addresses whether Schwan may redeploy the Production Licenses from a non-Active Household to an Active one. As Schwan argues, neither termination at the expiration of the Term nor payment for the full remainder of the Term precludes annual calculations. Absent a prohibition on redeployment, the Production Licenses can last through the end of the Term, and be fully paid through the end of the Term, and still be moved from a non-Active Household to an Active Household – with the effect that the non-Active Household is not counted as a Treated Household for purposes of the Production License Threshold. Section 6.3(a)'s silence on time limitations is not decisive because the method of counting Production Licenses is governed dictated by Section 6.2, not Section 6.3.

In response to Schwan's second theory, Opera contends that because each Production License is for "each such individual household license," redeployment of Production Licenses is not permitted; instead, each license may only be assigned to a single household for the duration of the Term. Opera reiterates its argument about the termination of Production Licenses, adding that they are non-refundable. However, the "each such individual household license" requirement in Section 6.1 does not necessarily require assignment to a "unique" household; it merely states that each Production License is for a single household and cannot be applied to multiple households at the same time. By contrast, the Amendment's addition of "unique" to Section 6.2 suggests that the parties intended that the calculation of the quantity of Production

8

Licenses be based on Schwan's determination as to which particular households are Active

Households, and therefore included in the Treated Households. The parties could have also

added "unique" to Section 6.1, but they did not. The non-refundable nature of the Production

Licenses does not render Schwan's interpretation unreasonable, as it ensures that Opera retains

License Fees for Production Licenses regardless of whether they are deployed with an Active

Household (a matter left to Schwan's discretion) in any given year.

As Schwan emphasizes, its interpretation of the CSLA and Amendment is consistent with

Section 6.2's requirement that the Production Licenses be counted "during each calendar year,"

and it is unclear what effect this requirement would have if the Production Licenses were counted

cumulatively. Opera suggests that this language was added during negotiations regarding

bonuses and therefore refers to "periods of time in which success could be measured for bonus

purposes" (D.I. 90 at 7 n.4), but negotiation-related evidence – being outside the corners of the

contract – is not relevant to the pending Motion.

Because Schwan's interpretation of the CSLA and Amendment is at least a reasonable

one (as is Opera's competing interpretation), the contract is ambiguous and the Court will deny

the motion with respect to Counterclaim One.

### B.     Counterclaim Two: Failure to Issue Monthly Invoices

In Counterclaim Two, Schwan alleges that "Opera breached the . . . Agreement and

Amendment by, among other things, failing to issue monthly invoices setting forth the applicable

License Fees," instead waiting to issue the first invoice for license fee overages until "18 months

after license overages allegedly began to accrue." (D.I. 79 at ¶¶ 15-16) Opera contends that

Schwan fails to state a claim upon which relief may be granted because Schwan does not allege

any facts supporting any damages.

"To state a claim for breach of contract Plaintiff must establish three elements. He must prove that a contract existed; he must establish that the defendant breached an obligation imposed by the contract; and he must show that the breach resulted in damage to him." *Langdon v. Google*, 474 F. Supp. 2d 622, 632 (D. Del. 2007). However, general damages need not be alleged in detail and require no proof. *See F.A.A. v. Cooper*, 132 S. Ct. 1441, 1451 (2012).

Schwan alleges general damages "in an amount to be proven at trial." (D.I. 79 at ¶ 28) The Court agrees with Schwan that it has pled damages adequately for Counterclaim Two to survive a motion to dismiss. (*See generally* D.I. 87 at 6) (Schwan arguing: "Although the contract required fees to be invoiced each month, and Opera now contends that fee overages began to accrue in March of 2011, it did not invoice those alleged fee overages until September 28, 2012, and did so only to apply leverage during the parties' negotiations on the disputed bonus claim issue."); *see also Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *27 (Del. Ch. Sept. 30, 2014) ("Contract damages are well-pled where, based on the facts that [plaintiff] has alleged, it can reasonably be inferred that, if those facts are true, [plaintiff] suffered damages.") (internal quotation marks omitted))

Accordingly, the Court will deny the motion with respect to Counterclaim Two.

## C.    Counterclaim Three: Breach of Venue Clause

In Counterclaim Three, Schwan alleges that "Opera breached the venue clause of the Licensing Agreement as Amended by (1) initiating suit in a New York court; and (2) opposing Schwan's motion to transfer the suit to Delaware." (D.I. 79 at ¶ 31) Opera contends that Counterclaim Three fails to state a claim upon which relief may be granted because the venue

clause in the CSLA is permissive, leaving it "entirely appropriate for a plaintiff to choose an alternate forum to file suit and to resist efforts to transfer the case." (D.I. 90 at 9) Opera further contends that Schwan may not relitigate the issue of damages based on the venue selection clause.

The venue clause in the CSLA provides:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles of conflicts of laws. Each Party hereby submits itself for the sole purpose of this Agreement and any controversy arising hereunder to the jurisdiction of the federal or state courts located in the State of Delaware, and any courts of appeal therefrom, and waives any objection (on the grounds of lack of jurisdiction, or *forum non conveniens* or otherwise) to the exercise of such jurisdiction over it by any such courts.

(D.I. 20 Ex. A at § 10.5)

The Court agrees with Opera that this venue selection clause is permissive. It provides that Delaware is an appropriate venue to resolve their disputes, but it does not expressly state nor imply that Delaware is the sole and exclusive forum to bring such disputes. *See Prestancia Mgmt. Grp., Inc. v. Va. Heritage Found., II LLC*, 2005 WL 1364616, at *7 (Del. Ch. May 27, 2005) ("[For] a forum selection clause [to be] . . . mandatory, . . . parties must use express language clearly indicating the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action. . . . [A]bsent clear language, a court will not interpret a forum selection clause to indicate the parties intended to make jurisdiction exclusive.") (last modification in original). Hence, Schwan fails to state a claim on which relief may be granted to the extent the claim is based on the allegation that Opera breached the parties' agreement by filing suit in the SDNY.

11

But Schwan's second theory of breach of the venue provision cannot be dismissed. Schwan alleges that Opera breached the parties' agreement with respect to venue selection by opposing Schwan's motion to transfer this action to Delaware. The Court agrees with Schwan that this portion of the counterclaim states a claim on which relief may be granted. By "submit[ting] . . . to the jurisdiction of the federal or state courts located in the State of Delaware," the parties may have intended to waive their rights to object to or oppose any effort by the other party to bring or move their disputes to the Delaware courts.

The Court further rejects Opera's contention that, because the SDNY did not award Schwan its fees and costs incurred in connection with prevailing on its motion to transfer, this Court must dismiss Schwan's counterclaim. Neither *res judicata*, collateral estoppel, nor law of the case apply bars Schwan from "relitigating" the breach of contract counterclaim. The SDNY did not rule on the merits of Schwan's claim for breach of the venue clause. *See generally LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del. 2009) (explaining *res judicata* requires prior decision on merits); *Holmes v. City of Wilmington*, 79 F. Supp. 3d 497, 509 (D. Del. 2015) (same for collateral estoppel). Schwan remains free in this case to assert that damages for breach of the venue clause include the fees and costs associated with initially litigating in the SDNY and transferring the action here.

Accordingly, the Court will deny the Motion with respect to Counterclaim Three.

## IV.   CONCLUSION

The Court will deny Opera's motion. An appropriate Order will be entered.